UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JAMES GLORIA,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTATE INDEMNITY COMPANY and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:22-cv-1126-WBS-CDK<br><br><br>MEMORANDUM AND ORDER RE: PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff James Gloria brought this action against defendants Allstate Indemnity Company and Does 1-50 alleging that Allstate breached the implied covenant of good faith and fair dealing with its handling of a 2014 uninsured motorist ("UIM") insurance claim that Gloria filed under his Allstate automobile policy.  (Docket No. 1 at 2.)  Plaintiff has now moved for summary judgment on the issue of liability (Docket No. 26), and Allstate has filed a counter motion for summary judgment. In the event that the court denies Allstate's motion, it alternately

1

moves for partial summary judgment dismissing Gloria's claim for punitive damages.  (Docket No. 27.)

I. BACKGROUND

On May 2, 2014, Gloria was rear ended in an automobile collision.  (Docket No. 26 at 2.)  Although he declined medical treatment from first responders at the scene, Gloria was admitted to Dameron Hospital later that same day due to back pain.  (Docket Nos. 27 at 10, 27-15 at 28—35.)  Following his discharge from the hospital, Gloria followed up with his primary care doctor on May 5, 2014.  (Docket No. 27-15 at 46.)  Then, on May 12, 2014, Gloria started treatment at Soto Chiropractic under the care of Dr. Edmund Zeiter, D.C., who placed him on disability leave.  (Docket No. 30-15 at 118—22.)  Dr. Zeiter cleared Gloria to return to work on July 28, 2014.  (Id.)  Between May 12, 2014, and August 4, 2014, Gloria received 25 chiropractic treatments.  (Docket No. 30-17 at 3.)

At the time of the accident, Gloria had an Allstate automobile insurance policy, which included a medical payment coverage limit of $5,000.00 and a UIM policy with a $100,000.00 coverage limit for bodily injury.  (Docket No. 27-1 at 9.)  Following the accident, Gloria submitted medical bills to Allstate under his medical payment coverage.  (Docket No. 27-1 at 6.)  But on August 18, 2014, Allstate sent a letter to Gloria notifying him that he had exhausted the medical pay coverage limit of his policy, which was $5,000.00, and advised him that any further medical treatment would need to be filed under his health insurance policy.  (Docket No. 30-2 at 6.)

Gloria also filed a third-party claim against Hartford

2

Underwriters Ins. Co., the third-party driver's automobile insurance provider, which was ultimately settled for the policy's full liability limit of $25,000.00.  (Docket No. 27-1 at 6.)  Upon the conclusion of his suit against Hartford, Gloria provided proof of the settlement to Allstate, and on August 18, 2015, he served Allstate with a demand for UIM arbitration, which was accepted.  (Docket No. 26-1 at 2.)

In June of 2016, Gail Dillard, an Allstate adjuster, evaluated his claim.  (Docket No. 27-17 at 3.)  She determined that treatment after July 29, 2014, was unrelated to Gloria's automobile accident and calculated the total value of his claim to be $31,371.47 before offsets to account for the $25,000.00 settlement paid by Hartford.  (Id. at 4.)

Allstate then retained Dr. Gary Alegre, M.D., a board-certified orthopedic surgeon, to serve as its independent medical expert ("IME").  Dr. Alegre examined Gloria on September 20, 2016, reviewed the available records in the case, and issued his IME report on October 21, 2016.  (Docket No. 27-18 at 2—11.)  Dr. Alegre's IME report affirmed Allstate's June 2016 evaluation in concluding that Gloria's injuries were fully resolved after July 29, 2014.  (Id.)

Then, on December 6, 2016, Allstate offered to settle Gloria's claim for $500.00.  (Docket No. 27-22 at 2.)

Throughout 2017, Gloria continued to receive chiropractic treatments as well as acupuncture.  (Docket No. 27-21 at 2—3.)  In 2018, he sought more intensive diagnostics and treatment.  (Id.)  On July 17, 2018, Gloria received an MRI of his lumbar spine.  (Id. at 3.)  Then, that October, Dr. Zeiter

3

|   |   |
|---|---|
| 1 | referred him for an orthopedic consult.  (Id.)  On December 7, |

referred him for an orthopedic consult.  (Id.)  On December 7, 2018, Gloria underwent a second MRI under the care of Dr. Ardavan Aslie, an orthopedic spine surgeon.  (Docket No. 29 at 4.)  Dr. Aslie recommended "spinal fusion surgery" as the only viable form of treatment for Gloria, a procedure expected to cost well over $250,000.00.  (Docket Nos. 26-1 at 4, 30 at 17.)

On September 1, 2020, the parties attended binding arbitration, and on October 2, 2020, the arbitrator found for Gloria, valuing his claim at $50,000.00.  (Docket No. 27-38 at 2–4.)

Gloria initiated the present action against Allstate on January 25, 2022, in the San Joaquin County Superior Court (Docket Nos. 26, 27, 29, 30.).  (See Docket No. 1-1.)  Allstate filed its answer on March 3, 2022.  (Docket No. 1 at 2.)  In his statement of damages filed on June 1, 2022, Gloria seeks an undetermined amount in special damages, $2,500,000.00 in general damages, $7,500,000.00 in punitive damages, and $75,000.00 in attorney's fees.  (Docket No. 1-2 at 2.)  On June 29, 2022, Allstate timely removed the suit to this court on diversity of citizenship grounds.  (Docket No. 1 at 2.)

II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a party may move for total or partial summary judgment by "identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought."  Fed. R. Civ. P. 56(a). Summary judgment empowers a court to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio

4

Corp., 475 U.S. 574, 586 (1986) (citing Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)).  Summary judgment is designed to "isolate and dispose" of factually unsupported claims which "no reasonable jury" would resolve in the claimant's favor. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

To prevail, then, the moving party must show -- based on the pleadings, discovery, and any other competent evidence submitted with the motion -- that there is no genuine dispute as to any material fact.  See Fed. R. Civ. P. 56(a).  A fact is material if it has the potential to affect the outcome of the suit pursuant to the applicable governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.  Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  California v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (citing Anderson, 477 U.S. at 247–48).  Finally, when evaluating a motion for summary judgment, all facts and inferences must be construed in the light most favorable to the non-moving party.  See Matsushita, 475 U.S. at 587.

III. ALLSTATE'S EVIDENTIARY OBJECTIONS

Allstate raises various evidentiary objections against Gloria's supporting evidence.  (See Docket Nos. 30-6, 33-1.)

As a preliminary matter, the court will disregard any objections that are duplicative of the summary judgment standard.

5

Under Federal Rule of Evidence 401, evidence is relevant if it "has any tendency to make a fact more or less probable" and that fact "is of consequence in determining the action." Fed. R. Evid. 401. Here, all of Allstate's objections are directed at the sworn declaration of Noah Schwinghamer. (See Docket No. 26-3 at 4–10.) However, the court does not rely on any part of Schwinghamer's declaration in reaching the conclusions below. Accordingly, the court Allstate's objections to Gloria's evidence are overruled. (See Docket Nos. 30-6, 33-1.)

IV. DISUSSION

   A. Bad Faith

California law recognizes that every contract contains an implied covenant of good faith and fair dealing. See Marsu, B.V. v. Walt Disney, Co., 185 F.3d 932, 937 (9th Cir. 1999) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."); see also Wilson v. 21st Century Insurance Company, 42 Cal.4th 713, 720 (2007). This covenant is understood to have "particular application" to contracts between insurers and the insured because they are "invested with a discretionary power affecting the rights of another." Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1161 (9th Cir. 2002) (citation omitted).

To prevail on a claim of bad faith against an insurer, a plaintiff needs to show that "benefits due under the policy were withheld" -- whether denied or delayed -- and that "the reason for withholding benefits was unreasonable or without proper cause." Pyramid Techs., Inc. v. Hartford Cas. Ins. Co., 752 F.3d 807, 823 (9th Cir. 2014) (quoting Guebara v. Allstate

Ins. Co., 237 F.3d 987, 992 (9th Cir. 2001) (citation omitted)). The "key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable" and "[t]he reasonableness of an insurer's claim-handling conduct is ordinarily a question of fact." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1009-10 (9th Cir. 2004) (citing Amadeo, 290 F.3d at 1161); see also Bosetti v. U.S. Life Ins. Co. in the City of New York, 175 Cal. App. 4th 1208, 1236 (2009) ("[A]n insured plaintiff need only show . . . that the insurer unreasonably refused to pay benefits."). Crucially, to determine whether an insurer's "conduct in denying [a] claim was reasonable," that conduct in question must be evaluated in the context of what the insurer knew "at the time that the allegedly 'bad faith' decision was made." Aceves v. Allstate Ins. Co., 827 F. Supp. 1473, 1484 (S.D. Cal. 1993), rev'd in part, 68 F.3d 1160 (9th Cir. 1995).

An insurer acts unreasonably when it fails to properly investigate the policyholder's claim. See, e.g., Century Sur. Co. v. Saidian, No. 12-cv-7428 SS, 2016 WL 6440140, at *18 (C.D. Cal. Mar. 16, 2016). "[W]hether an insurer breached its duty to investigate [is] a question of fact to be determined by the particular circumstances of each case." Paulfrey v. Blue Chip Stamps, 150 Cal.App.3d 187, 196 (1983). Additionally, an insurer acts unreasonably when its investigation of the insured's claim is biased. Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 381 (C.D. Cal. 1995) ("[A]n insurer breaches the implied covenant of good faith by conducting a biased investigation.") (citation omitted).

An insurer also acts unreasonably when it ignores

7

1 evidence that supports the policyholder's claim.  Allstate Ins.
2 Co. v. Madan, 889 F. Supp. 374, 381 (C.D. Cal. 1995) ("An insurer
3 is liable for bad faith if it disregards evidence supporting
4 coverage."); see also Tetravue Inc. v. St. Paul Fire & Marine
5 Ins. Co., No. 14-cv-2021 W BLM, 2018 WL 1172852, at *5 (S.D. Cal.
6 Mar. 6, 2018) ("[B]ad faith may lie where a claim is denied on a
7 basis unfounded in the facts known to the insurer, or
8 contradicted by those facts or where the insurer ignores evidence
9 that supports the insured's claim, and just focuses on facts that
10 justify denial." (citation and internal quotation marks
11 omitted)).
12         Here, Gloria advances four lines of argument in support
13 of its bad faith claim against Allstate.
14         First, Gloria argues that Allstate "failed to perform
15 even a basic investigation . . . and it certainly did not perform
16 a thorough, fair, or objective investigation."  (Docket No. 26-1
17 at 8.)  Specifically, Gloria contends that because Allstate
18 "neither interviewed nor deposed any of [his] friends, family
19 members, or treating physicians regarding [his] injuries," it
20 failed to seek and learn "information that corroborated" his
21 claims.  (Id.)  Gloria argues that this failure on the part of
22 Allstate amounts to a violation of its duty to "fully inquire
23 into possible bases that might support the insured's claim."  See
24 Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 819 (1979).
25         In response, Allstate argues that its investigation
26 included (a) "obtaining and carefully reviewing Gloria's
27 voluminous medical records"; (b) "retaining arbitration counsel,
28 who conducted written discovery, took Gloria's deposition, and

8

assisted in Allstate's investigation"; (c) "retaining an independent Board-certified orthopedic surgeon to examine Gloria, review his medical records, and testify at arbitration"; (d) "evaluating Gloria's claim, making settlement offers, and attempting to consummate a settlement"; and (e) preparing for arbitration to resolve the parties' dispute regarding the value of the claim." (Docket No. 30 at 24–25.)

Allstate is correct that no authority exists for Gloria's proposition that an insurer is <u>required</u> to interview an insured's friends, family, or treating doctors to fulfill its obligation to properly investigate. (<u>See</u> Docket No. 26.) What may be required, rather, is that an insurer investigate that which needs to be investigated, particularly the possible bases for supporting the insured's claim, not ignoring such evidence, and not searching for or relying on <u>only</u> the evidence that weighs against the insured's claim. <u>See, e.g.</u>, <u>Saidian</u>, 2016 WL 6440140 at *18; <u>Madan</u>, 889 F. Supp. at 381; <u>Tetravue Inc.</u>, 2018 WL 1172852 at *5.

In determining whether Allstate acted unreasonably, therefore, the question then becomes whether Allstate had reason to expand its investigation pursuant to its investigatory duties under <u>Egan</u>. "The reasonableness of an insurer's conduct is usually a question of fact, although it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." <u>Saidian</u>, 2016 WL 6440140 at *18 (citation omitted). Because more than one inference can be drawn from the record here, this is a question of ultimate fact and must be answered by a jury. <u>Id.</u>; <u>see also</u>

1  Bafford v. Travelers Cas. Ins. Co. of Am., No. 2:11-cv-2474 LKK,
2  2012 WL 5465851, at *7 (E.D. Cal. Nov. 8, 2012) ("An insurer's
3  efforts to seek more information from several sources and
4  reconsider plaintiff's claims at various times has been held to
5  demonstrate good faith; conversely, an insurer's early closure of
6  investigation and unwillingness to reconsider a denial when
7  presented with evidence of factual errors will fortify a finding
8  of bad faith." (citation and internal quotation marks omitted)).

9       Second, Gloria argues that Allstate ignored evidence
10 that would support his claim by failing to revise the valuation
11 of his claim in response to Gloria providing additional medical
12 evidence, including the results of his 2018 MRI under the care of
13 Dr. Aslie -- Gloria's then-treating physician -- and the
14 subsequent surgical recommendation.  (Docket No. 26-1 at 9—10.);
15 see also Madan, 889 F. Supp. at 381 ("An insurer is liable for
16 bad faith if it disregards evidence supporting coverage.").  In
17 response, Allstate maintains that "during the claim, [it] gave
18 full and careful consideration to all available information,
19 including Gloria's medical records and deposition testimony."
20 (Docket No. 30 at 25.)  Allstate continues, arguing that just
21 because it "analyzed or gathered that information differently
22 than Gloria would prefer does not mean that [it] somehow
23 'ignored' evidence."  (Id.)

24      Third, Gloria contends that Allstate acted in bad faith
25 by failing to make a reasonable settlement offer when Adjuster
26 Dillard offered "only $500," but Allstate argues that its offer
27 was a negotiating starting point in an attempt at settling
28 Gloria's claim.  (Compare Docket No. 26-1 at 11, with Docket No.

10

30 at 27–28.)  Once again, these contradictory characterizations of the same, undisputed evidentiary facts signal that they are questions of ultimate fact that can only be answered by a jury. See McClatchy Newspapers, Inc. v. Cont'l Cas. Co., No. 1:14-cv-00230-LJO, 2015 WL 2340246, at *10 (E.D. Cal. May 13, 2015) ("California courts have determined, like all other issues, that when there are genuine factual disputes, bad faith claims cannot be decided in summary judgement proceedings.").

Fourth, Gloria argues that Allstate's selection of and reliance on Dr. Alegre as its IME resulted in a biased investigation.  (Docket No. 26-1 at 11–12.)  Gloria contends that Dr. Alegre was unqualified because there are six "prior malpractice cases against him," and he is biased because he testifies as an IME exclusively on behalf of insurers.  (Id. at 11.)  Gloria asserts that Dr. Alegre's medical opinion was effectively "purchased" by Allstate for $10,250.00.  (Id.) Allstate, on the other hand, argues that, as a matter of law, Dr. Alegre -- who is a board-certified orthopedic surgeon -- is not biased merely because he has previously worked for Allstate. (Docket No. 30 at 29.)

As the court in Fadeeff v. State Farm Gen. Ins. Co. observed, there are "several circumstances where a biased investigation claim should go to jury."  50 Cal. App. 5th 94, 102 (2020), as modified on denial of reh'g (July 1, 2020) (citing Guebara, 237 F.3d at 994).  These include: (1) "the insurer was guilty of misrepresenting the nature of the investigatory proceedings"; (2) "the insurer's employee's lied during the depositions or to the insured"; (3) "the insurer dishonestly

11

selected its experts"; (4) "the insurer's experts were unreasonable"; and (5) "the insurer failed to conduct a thorough investigation." Pyramid Techs., 752 F.3d at 823.  Here, Gloria alleges precisely that Allstate was dishonest in its selection of Dr. Alegre.  (See Docket No. 26-1 at 11-12.)  Accordingly, this, too, presents the court with a question of ultimate fact that must be answered by a jury.  Therefore, Gloria's motion will be denied.

> 1. Inapplicability of the Genuine Dispute and Active Investigations Doctrines

The genuine dispute doctrine and the active investigation doctrine are both insufficient to take plaintiff's bad faith claim away from the jury.

Ordinarily, the genuine dispute doctrine provides that an insurer cannot be found liable for bad faith for a coverage determination so long as it can show that its denial of coverage or delay in payment was the result of there being a genuine dispute between the insurer and insured as to coverage or the amount of loss.  In other words, "[w]here there is a genuine issue as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute." Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co., 90 Cal. App. 4th 335, 347 (2001).

However, the genuine dispute doctrine does not constitute a blanket liability shield against claims of bad faith: "An insurer cannot claim the benefit of the genuine dispute doctrine based on an investigation or evaluation of the

12

insured's claim that is not full, fair and thorough." Bosetti v. U.S. Life Ins. Co. in the City of New York, 175 Cal. App. 4th 1208, 1237 (2009).

Contrary to Allstate's suggestion, however, the doctrine does not provide -- without restrictions -- that an insurer "cannot be held liable for bad faith so long as a genuine dispute existed about coverage or the amount covered." (Docket No. 27-1 at 15.)  The doctrine is a defense against a claim of bad faith alleging that the insurer unreasonably delayed payment or denied coverage.  But it does not shield an insurer from bad faith liability arising out of failing to investigate, ignoring evidence that supports the insured's claim, or conducting a biased investigation.  See Pyramid Techs., Inc. v. Hartford Cas. Ins. Co., 752 F.3d 807, 823 (9th Cir. 2014) ("[The] genuine dispute doctrine should be applied on a case-by-case basis and does not protect allegedly biased investigations." (citations omitted)).

Similarly, although delays resulting from an insurer's need to conduct a thorough investigation of a policyholder's claim generally cannot be used to support a finding of bad faith, the fact that the insurer is actively investigating does not automatically preclude a finding of bad faith on other grounds.  See generally Guebara v. Allstate Ins. Co., 237 F.3d 987 (9th Cir. 2001).

Neither of these doctrines foreclose a finding of bad faith based on the record in this case.  At the same time, the facts in the record do not compel a finding of bad faith as a matter of law.  While the evidentiary facts here are undisputed,

13

what remains is the question <u>how</u> those facts bear on the determination of whether Allstate's behavior was reasonable and whether it acted in bad faith when handling Gloria's claim. Here, the court must conclude that a reasonable jury could find <u>either</u> for Gloria <u>or</u> for Allstate on the issue of bad faith. Therefore, Allstate's motion for summary judgment must also be denied.

### B. <u>Punitive Damages</u>

To prevail on a claim for punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant's conduct amounted to "oppression, fraud, or malice." Cal. Civ. Code § 3294(a); <u>see also</u> <u>Tibbs v. Great Am. Ins. Co.</u>, 755 F.2d 1370, 1375 (9th Cir. 1985) (citing <u>San Jose Production Credit Ass'n v. Old Republic Life Insurance Co.</u>, 723 F.2d 700, 705 (9th Cir.1984)) ("Punitive damages are recoverable, however, when the defendant breaches the implied covenant of good faith and fair dealing <u>and</u> is guilty of oppression, fraud or malice." (emphasis in original)).

California Civil Code 3294(c) defines those terms as follows:

(1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or <u>despicable conduct</u> which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

(2) "Oppression" means <u>despicable conduct</u> that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

(3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part

14

>     of the defendant of thereby depriving a person of
>     property or legal rights or otherwise causing
>     injury.

Cal. Civ. Code § 3294(c)(1—3) (emphasis added); see also Bajwa v. United States Life Ins. Co., No. 1:19-cv-00938-JLT-SAB, 2024 WL 1344675, at *18 (E.D. Cal. Mar. 29, 2024).

Gloria persists in relying on fraud as a basis for his punitive damage claim, although it is unclear what material fact he claims Allstate misrepresented. In his brief in opposition to Allstate's motion he states that:

> Allstate engaged in fraud when it purchased the
> medical opinions it wanted from Dr. Alegre. Alstate
> paid him over $10,000 for his opinions, while never
> budging from their %500 offer to Plaintiff. Allstate
> knows it could have gotten a legitimate doctor, but
> they chose a hack. This was deceitful, and Allstate
> has done this thirty times.

It is unnecessary for the court to make a finding at this stage as to whether that amounted to misrepresentation of a material fact because the court finds for the following reasons that the evidence is sufficient to permit plaintiff's punitive damage claim to go to the jury on his theory of malice or oppression.

As a threshold question, conduct is "despicable" only when it is "so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people.... such conduct has been described as [having] the character of outrage frequently associated with crime." CACI No. 3945, JUDICIAL COUNCIL OF CALIFORNIA CIVIL JURY INSTRUCTIONS (2025 edition); American Airlines Inc. v. Sheppard, Mullin, Richter & Hampton, 96 Cal.App.4th 1017, 1049-50 (2002). The despicable standard thus "represents a serious limitation on

punitive damages awards." Okerman v. Life Ins. Co. of N. Am., No. 00-cv-0186-GEB-PAN, 2001 WL 36203082, at *7 (E.D. Cal. Dec. 24, 2001) (citing Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc., 78 Cal. App. 4th 847, 891 (2000), as modified on denial of reh'g (Mar. 29, 2000)).

That said, usually "the question of whether the defendant's conduct will support an award of punitive damages is for the trier of fact, since the degree of punishment depends on the peculiar circumstances of each case." Johnson & Johnson v. Superior Ct., 192 Cal.App.4th 757, 762, (2011) (internal citations and quotation marks omitted).

While a court may rule on the question of punitive damages at the summary judgment stage, it may not "impose on a plaintiff the obligation to 'prove' its case" at the summary judgment stage. Barrous v. BP P.L.C., No. 10-cv-02944-LHK, 2011 WL 4595205, at *15 (N.D. Cal. Oct. 3, 2011). Rather, a court properly adjudicates the issue of punitive damages at summary judgment "only when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression." Johnson & Johnson, 192 Cal.App.4th at 762 (emphasis added).

Where a reasonable jury could find for the plaintiff, there exists a triable question of ultimate fact that must be answered by a jury. See Morcom v. Newport Aquatic Ctr., No. 20-cv-2444-DOC-ADS, 2021 WL 5927907, at *8 (C.D. Cal. Aug. 31, 2021) (holding that because "[a] jury could find this to be 'despicable conduct' . . . Plaintiff's request for punitive damages is not suitable for summary adjudication."). Accordingly, although it

16

may seem unlikely to the court that a jury would find on this evidence that Allstate's conduct was so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people, that is a question for the jury, not the court, to answer.

Finally, where, as here, defendant is a corporate entity, a plaintiff must also prove that the offending conduct was carried out or ratified by "an officer, director, or managing agent of the corporation." Cal. Civ. Code § 3294(b); see Glovatorium, Inc. v. NCR Corp., 684 F.2d 658 (9th Cir. 1982); Kelsey v. Allstate Ins. Co., No. 04-cv-01224-RMW, 2005 WL 1773302, at *11 (N.D. Cal. July 26, 2005).

Under California law, the controlling case on what constitutes a managing agent is Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809 (1979). Ginda v. Exel Logistics, Inc., 42 F. Supp. 2d 1019, 1022 (E.D. Cal. 1999) ("Egan is the seminal case on what constitutes a "managing agent[.]'"). In Egan, the California Supreme Court held that "[w]hen employees dispose of insureds' claims with little, if any, supervision, they possess sufficient discretion for the law to impute their actions concerning those claims to the corporation." 24 Cal.3d at 823. Instead, the court explained, "the critical inquiry is the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy." Id.

The standard established by Egan further provides that the exercise of sufficient discretion -- even on the part of an employee who is relatively low in the corporate hierarchy -- "necessarily results in the ad hoc formulation of policy." Id.;

17

see also Rangel v. Am. Med. Response W., No. 1:09-cv-01467-AWI, 2013 WL 1785907, at *31 (E.D. Cal. Apr. 25, 2013) (citing Siva v. General Tire & Rubber Co., 146 Cal.App.3d 152 (1983)).  In Mosley v. Ashley Furniture Indus., Inc., the court held that:

> [T]he formulation of ad hoc policy is also established in the context of insurance agents, who, despite not being high in the corporate hierarchy in their setting of policy, dispose of insureds' claims with little to no supervision and thus are involved in the ad hoc formation of corporate policy.

No. 1:18-cv-00557-SAB, 2019 WL 2325557, at *28 (E.D. Cal. May 31, 2019).

Similarly, this court has held previously that "[a] manager's ability to decide whether or not a particular policy is applied in particular circumstances is tantamount to making decisions that affect both the store and company policy." Almanza v. Wal-Mart Stores, Inc., No. 2:06-0553-WBS-GGH, 2007 WL 2274927, *5 (E.D. Cal. Aug. 7, 2007) (citing White v. Ultramar, 21 Cal.4th 563, 577 (1999)); cf. LMA N. Am., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa, 924 F. Supp. 2d 1188, 1207-08 (S.D. Cal. 2013) ("Viewing the evidence in the light most favorable to LMA, a reasonable jury could find that Manger, who was the only National Union agent 'proactively involved' in 'assess[ing]' the claim and 'read[ing] any of the underlying documentation' . . ., was a 'managing agent' of National Union pursuant to California Civil Code § 3294(b).") (citation modified).

Considering the evidence under this standard, Gloria has made a sufficient showing to create a triable issue of fact on the ultimate question of whether Adjuster Dillard was a

18

managing agent of Allstate.  Without reference to the entire record in this case, Gloria presents evidence upon which a reasonable jury could find that Dillard exercised such discretionary authority in her role as a claims adjuster as to impute her actions concerning those claims to the corporation. See Garcia v. New Albertson's, Inc., No. 2:13-cv-05941-CAS, 2014 WL 4978434, at *8 (C.D. Cal. Oct. 3, 2014) ("[T]he question of whether an employee is a managing agent "is a question of fact for decision on a case-by-case basis," and that in light of California precedent, judgment as a matter of law is inappropriate at this stage of litigation.").

        Accordingly, Allstate's alternative motion with regard to plaintiff's claim for punitive damages, whether it be considered as a motion partial summary judgment, a motion to strike, or a motion to dismiss, must be denied.

V. CONCLUSION

        For the reasons discussed above, Gloria is not entitled to summary judgment on the issue of liability on his claim that Allstate breached the implied covenant of good faith and fair dealing in its handling of his 2014 claim.  Nor is Allstate entitled to summary judgment on either the question of whether it acted in bad faith or the question of whether it may be found liable for punitive damages.

        IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment on the issue of liability for breach of the implied covenant of good faith and fair dealing (Docket No. 26),
///
///

and defendants' motion for summary judgment or in the alternative partial summary judgment (Docket No. 27) be, and the same hereby are, DENIED.

Dated:  November 13, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE